*Foster 279-91.*

If you believe it homicide in self-defence, you may acquit the prisoner on this indictment.

Verdict not guilty.

---

### Lessee of WILLIAM WADDEL *v.* THOMAS GRAY.

THIS was an ejectment for 302 acres and 18 perches of land in *Plumb* township, *Allegheny* county, on the demise of *Robert Waddel,* of 2d *July,* 1791, to hold from 1st *July,* 1791, for ten years.

The plaintiff shewed a warrant dated 30th *August,* 1785, for 300 acres of land, on the waters of *Thompson's* run, joining lands of *Bernard Dougherty* and others, interest commencing from 4th *March,* 1772; with a survey, made 7th *July,* 1787, on this warrant and an order of the Board of Property of 5th *March,* 1787, containing 302 acres and 18 perches; and a patent, on this warrant and survey, dated 24th *March,* 1792.

He then proved, that *Joseph Creswell,* having a general authority from *David Rogers* to make or buy improvements for him, bought, for a trifle, from *James*

*Myers*, a fmall improvement, to wit, fome trees deadened, got a furvey made on it including this improvement and the land in difpute, hired a man to make rails, had about nine hundred made, fome more trees deadened, and a cabbin raifed to the joifts. This was between the years 1772 and 1774. None ever lived on the land, till *Ifaac West* came on it, claiming for himfelf. This was before, or in, the year 1774. He roofed the cabbin, and lived in it; built a houfe twenty-feven feet long, made a large improvement of upwards of twenty acres of cleared land, and lived on the land till 1778, when he was killed by the *Indians*, the houfe burnt, and the neighbourhood defolated.

The defendant fhewed a location, No. 3396, in the name of *Eleazer Myers*, dated 13th *June*, 1769, for 300 acres of land, joining lands of *Jacob Boufman*, about a mile and a half from *Forbes's* breaft-works, on the waters of *Thompfon's* run, on the right hand branch about four miles and a half from the mouth; with a furvey made on this location, 3d *December*, 1784, containing 352½ acres and allowance, on a branch of *Thompfon's* run in *Pitt* townfhip, *Weftmoreland* county. Before this furvey, *E. Myers* had, on this location perhaps, though that did not certainly appear, made a furvey of another tract of land, about half a mile or three quarters of a mile diftant from this, and fold it to *Bernard Dougherty*; but one *Beattie* having a prior location for that, *E. Myers* gave up his pretenfions, that *Beattie* might obtain his patent, and afterwards, on 3d *December*, 1784, made the above furvey of the land in queftion, which anfwered exactly, and better than *Beattie's* land, to the defcription of this location.

The defendant alfo proved, that, in the fall of 1772, *Robert Thompfon* made an improvement on the land in queftion, on *Thompfon's* run, deadened trees, made brufh heaps, marked a tree with his name, and afterwards, and perhaps before *West* was killed, fold this improvement to *E. Myers* for 15*l*. *Crefwell's* improvement was about a quarter of a mile diftant, and both his and *Thompfon's* were within both furveys made on *Waddel's* warrant and *Myers's* location. In fpring, 1785, *E. Myers* put a tenant on the land, who fitted up an old uncovered cabbin, and went into it, under a leafe for four years.

1794.

The old improvement was then all grown up. None had lived on it from the time of *West's* death. This tenant cleared and planted nine acres that spring, twelve acres the spring following, and nine the spring after that. *E. Myers* occasionally, from time to time, claimed title, through his location, to the land in *West's* possession. *Isaac Lane*, who came to this country with *West* in 1772, made an improvement a quarter of a mile distant from *West's*, and, together with *West's*, within the survey afterwards made by *Creswell*. In the fall of 1772, or spring of 1773, *Rogers* and *Waddle* came to *Lane*, and he bought *Rogers's* claim for 10*l.* *E. Myers* was present, and said he would have that or the adjoining tract by his location, but would let *West* live there all his days.

PRESIDENT recapitulated the title and testimony on both sides, and made three questions.

1. Had *E. Myers* a right to lay his location on any vacant land, supposing he had, before, laid it on *Beattie's* land, which is not the land in dispute ?

2. On 3d *December*, 1784, was there any thing to hinder *E. Myers*, from laying his location on the land in dispute ?

3. Will the plaintiff's patent, as signifying the will of the proprietor, conclude you from examining the adverse titles, as they stood on 3d *December*, 1784 ?

1. The location applies exactly to this land, and would not apply so well to any other. *E. Myers* therefore mistook in his first survey, and got nothing by it ; for an elder title intervened. Was he therefore bound by this mistaken election, or might he correct his mistake, and come upon the land which really answers the description in his location ? I think he was not bound by his first election, and he might make a new survey on land answering the description in his location, unless, in the mean time, an adverse title, either positive or equitable, had, under the confidence of his first election, attached itself to the land described in the location, afterwards resorted to, and now disputed.

But it is objected, that *Eleazer Myers* had sold to *Dougherty*, and could not then change the application of the location. I answer, this lies not in the mouth of *Waddel.*

1794.

~~On 3d December,~~ 1784, *Waddel* had no positive strict legal title. Had he then such an equitable title, as was sufficient to exclude the location from this land? I think not. His only title was a cabbin unfinished, and rails cut; a mere *improvement* (as to distinguish it from a settlement I will call it) made on a general *land-jobbing* scheme, and never pursued by the maker up to a real settlement. The title of *Francis Waddel* (if it were vested in *Robert*) was but precisely what the title of *Rogers* was. The only actual settlement was made by *West*. But why should *Waddel* derive any benefit from the labour of *West*, rather than the tenant in possession? Surely the tenant in possession has of the two the best right to claim under this labour of *West's*.

3. The proprietor or Commonwealth, or any other owner of property may give it to whom they please, provided they have not tied up their hands, by a prior engagement, either positive or equitable. But if they have, courts of justice will not suffer them to break through their prior engagement, but will hold them to it. On 3d *December*, 1784, they were bound to *E. Myers*. Therefore the case is to be considered as of that date: and if *E. Myers* had a good title then, he has it yet. He had a good title then.

The jury being at the bar, ready to give a verdict, the plaintiff suffered a nonsuit.